**STATE of Tennessee, Appellee,**

v.

**Nathan SMITH, Appellant.**

Supreme Court of Tennessee,
at Nashville.

Nov. 12, 1996.

Charles W.B. Fels, Kenneth F. Irvine, Jr., Knoxville, on appeal, Edward L. Hiland, Nashville, Charles I. Poole, Sevierville, at trial, for Appellant.

Charles W. Burson, Attorney General and Reporter, Michael Moore, Solicitor General, Michael W. Catalano, Associate Solicitor General, Victor S. Johnson, III, District Attorney General, Renee Erb, Asst. District Attorney General, Nashville, for Appellee.

## OPINION

BIRCH, Chief Justice.

Nathan Smith, the defendant, appeals the judgment of the Court of Criminal Appeals affirming his two convictions for aggravated sexual battery. In this appeal, Smith contends that the trial court erroneously admitted incriminating statements he made to a mental health counselor. He insists that these statements should have been suppressed because: (1) they were elicited in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) they constituted an involuntary confession; and (3) they were solicited under circumstances that violated his due process rights under the Fourteenth Amendment to the United States Constitution and Article I, § 8 of the Tennessee Constitution. Under the facts of this case, we find that the admission of these statements did not violate the defendant's state or federal constitutional rights; accordingly, we affirm the judgment.

## I

The record reflects that one morning the defendant, clad only in his bathrobe, entered the bedroom of his stepdaughter, AJ.[1] He sat on the edge of her bed and placed her hand on his penis. He removed her hand momentarily and then placed it there again.

A few days later, AJ's mother (the defendant's wife) learned of the incident. She immediately confronted Smith about AJ's allegations. Smith and his wife then voluntarily reported the allegations to the Tennessee Department of Human Services (DHS).

On the day the matter was reported, DHS social worker Tracy Walker interviewed the victim, her mother, and the defendant. Walker told the defendant that, from her experience with the district attorney general's office, if a perpetrator admitted the allegations and received treatment, he probably would not be indicted. She also told the defendant that she could not promise that he would not be prosecuted. Walker also told the defendant that he would be indicted if he did not seek counseling. Walker referred the defendant to Luton Mental Health Center.[2]

A few days later, the defendant met with Walker and Jeff West, a detective attached to the Youth Services Division of the Metropolitan Nashville–Davidson County Police

---

1. In cases involving sexually oriented crimes, the Court endeavors to withhold the identity of young victims when appropriate.

2. Although the record is not clear, apparently Luton Mental Health Center is a private facility.

Department. West interviewed the defendant at the station; the interview was tape-recorded. The defendant presented himself for this interview voluntarily and was permitted to leave at its conclusion.

Six weeks later, the defendant sought counseling at Luton Mental Health Center. During a session with a counselor, he admitted that the unlawful sexual contact had occurred and that he had found it sexually stimulating.

Neither Walker, West, nor the counselor ever advised the defendant that he had the right to remain silent and that his statements could be used against him. Additionally, the counselor failed to advise him that his statements to her were not statutorily confidential.[3]

At a pre-trial hearing, the trial court suppressed the statements the defendant made to Walker and West, presumably based on their respective failure to advise him of his rights pursuant to *Miranda v. Arizona.*[4] After a jury-out hearing at trial, the counselor was permitted to testify about the defendant's incriminating statements to her. The trial court admitted this testimony reluctantly, noting:

> We've got a D.H.S. agent, or representative, going to this man and saying, "look, if you'll go get help, we might not prosecute you on this matter." The man goes and gets help, and then you bring that witness in to buttress your case. In other words, you mousetrapped him, didn't you?

At the conclusion of the proof, the jury found the defendant guilty of two counts of aggravated sexual battery. He was sentenced as a mitigated offender to concurrent 7.2 year sentences.[5]

3. Tenn.Code Ann. § 37–1–614 abrogates the privileged nature of communications between any professional person and his or her patient or client where the subject matter of those communications relates to child sexual abuse.

4. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court did not expressly state its reasons for the ruling on the record.

5. We interpret this to be seven years seventy-three days; the record is, however, unclear.

## II

The Fifth Amendment to the United States Constitution[6] provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." Article I, § 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused ... shall not be compelled to give evidence against himself."

As a general rule, a person must affirmatively invoke these protections. *Minnesota v. Murphy,* 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984); *McCormick on Evidence* § 125 (John William Strong ed., 4th ed.1992). There are three exceptions to this requirement; two are pertinent here: (1) an individual is not required to invoke the right to avoid self-incrimination during a custodial interrogation by a government agent[7] and (2) an individual is not required to invoke the right to avoid self-incrimination if the government has threatened a penalty if the privilege is asserted.[8]

According to the defendant, the counselor was required to advise him of his *Miranda* rights prior to their discussion, and he was excused from asserting his right to avoid self-incrimination.

During a custodial interrogation, state agents must affirmatively advise an individual of his right to remain silent and of the consequences of his failure to assert that right. *Miranda,* 384 U.S. at 467–69, 86 S.Ct. at 1624–25. To constitute a "custodial interrogation," (1) the subject must be "in custody"; (2) there must be an interrogation; and (3) the interrogation must be conducted by a state agent. *Id.* at 444, 86 S.Ct. at 1612.

6. The Fifth Amendment applies to the states via the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

7. *Miranda,* 384 U.S. at 436, 86 S.Ct. at 1602.

8. *Murphy,* 465 U.S. at 434–39, 104 S.Ct. at 1145–49.

An accused is "in custody" if "deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494–96, 97 S.Ct. 711, 713–15, 50 L.Ed.2d 714 (1977); *State v. Smith*, 868 S.W.2d 561, 570 (Tenn.1993). The determinative inquiry is whether "there is a 'formal arrest or restraint of freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)(*quoting Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714); *Smith*, 868 S.W.2d at 570. The circumstances of each case will influence a determination of whether a suspect is "in custody" and thus entitled to *Miranda* protection. *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520; *see generally State v. Cooper*, 912 S.W.2d 756 (Tenn.Crim.App.1995). We think the circumstances in this case clearly indicate that this defendant was not in custody at the time the incriminating statements were made. Although Walker referred Smith to Luton Mental Health Center, she had no further participation in the defendant's decision to visit the center for counseling almost six weeks after the referral. Smith was free to leave at any time and, in fact, did so after each counseling session. There is no indication whatsoever that his freedom of movement was restrained. Accordingly, Smith was not "in custody," for *Miranda* purposes, at the time he made his incriminating statements to the counselor.

Because the defendant was not in custody, there is no need for us to determine whether the counselor was a state agent or whether her discussions with the defendant amounted to interrogation. Smith was not in custody; therefore, the absence of *Miranda* warnings did not violate his constitutional right to avoid self-incrimination.

## III

The defendant contends that Walker, as an agent of the state, compelled him to make the incriminating statements to the counsel-or, thereby producing an involuntary confession.[9]

Because we find that there was no compulsion, we need not consider the concomitant issue of whether Walker, as a DHS social worker, acted as a state agent when she referred the defendant to Luton Mental Health Center. Nevertheless, it is helpful to describe the mandated interaction of the various governmental entities that respond to reports of child sexual abuse. In these cases, DHS personnel, although not officially members of law enforcement, function to some degree in that capacity. When a report of child sexual abuse is received, the "child protective team" is convened for the county in which the child resides or where the abuse alleged occurred. Tenn.Code Ann. § 37–1–607. The teams are composed of representatives from DHS and the district attorney general's office, a juvenile court officer or investigator, and a law enforcement officer. *Id.* Tennessee Code Annotated § 37–1–607(a)(3) provides "that the child protective investigations be conducted by the team members in a manner which not only protects the child *but which also preserves any evidence for future criminal prosecutions*" (emphasis added). DHS must orally notify the child protective team, the district attorney general, and the appropriate law enforcement agency, immediately upon learning of any alleged child sexual abuse. DHS and the team are then required to make a full written report to the district attorney general within three days of the oral report. Tenn.Code Ann. § 37–1–607(b)(3). The team may recommend a particular disposition of the case to the district attorney general, but the final decision rests with the district attorney general. Tenn.Code Ann. § 37–1–607(b)(5).[10]

We now determine whether Walker's "advice" to the defendant "compelled" his statement to the counselor. Smith contends that his statement was "compelled" for two rea-

---

9. Smith apparently relies on Walker's alleged "threat" to excuse his obligation to invoke his right to avoid self-incrimination. *Murphy*, 465 U.S. at 434–39, 104 S.Ct. at 1145–49. As discussed *infra*, Part IV, we do not agree with Smith's categorization of Walker's statements.

10. Walker testified that she recommended that the case not be prosecuted, but rather that reunification of the family be sought. The district attorney general obviously did not concur in this recommendation.

sons. First, he argues that Walker promised him leniency if he did not exercise his right to avoid self-incrimination. Second, he argues that Walker threatened him with prosecution if he did exercise his right to avoid self-incrimination.

■ In a jury-out hearing, prior to the counselor's testimony at trial, the trial court found that the statements to the counselor were voluntary. This determination is conclusive unless the evidence in the record preponderates against that finding. *State v. Kelly,* 603 S.W.2d 726, 728 (Tenn.1980); *State v. Chandler,* 547 S.W.2d 918, 922–23 (Tenn.1977).

■ The test of voluntariness for confessions under Article I, § 9 of the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment. *State v. Stephenson,* 878 S.W.2d 530, 544 (Tenn.1994); *State v. Smith,* 834 S.W.2d 915, 918–19 (Tenn.1992).

In *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), the Supreme Court held that in order for a confession to be admissible, it must be "free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence...." *Id.* at 542–43, 18 S.Ct. at 187. Since *Bram,* courts have struggled to articulate a test of voluntariness capable of accommodating the infinite variety of circumstances in which an accused individual is questioned and may ultimately confess. Justice Stewart noted that the effort has yielded "no talismanic definition of 'voluntariness'...." *Schneckloth v. Bustamonte,* 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973). Justice Frankfurter described the notion of "voluntariness" as "an amphibian." *Culombe v. Connecticut,* 367 U.S. 568, 604–05, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037 (1961).

In *Rogers v. Richmond,* the Supreme Court set out the standard for determining the admissibility of a confession under the Fourteenth Amendment:

convictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth.

*Rogers v. Richmond,* 365 U.S. 534, 540–41, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961).[11]

■ In Tennessee, the particular circumstances of each case must be examined as a whole. *Monts v. State,* 218 Tenn. 31, 400 S.W.2d 722, 733 (1966). A defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense. *State v. Brimmer,* 876 S.W.2d 75, 79 (Tenn.1994)(*citing Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986)). Rather, "coercive police activity is a necessary predicate to finding that a confession is not voluntary...." *Id.; State v. Branam,* 855 S.W.2d 563, 568 (Tenn.1993).

■ Promises of leniency by state officers do not render subsequent confessions involuntary *per se:* " 'The Fifth Amendment does not condemn all promise-induced admissions and confessions; it condemns only those which are *compelled* by promises of leniency.' " *Kelly,* 603 S.W.2d at 729 (*quoting Hunter v. Swenson,* 372 F.Supp. 287, 300–01 (D.C.Mo.1974)(emphasis added)). The critical question is " 'whether the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely

---

**11.** *Rogers* was decided under the Fourteenth Amendment due process clause. *Rogers* predates *Malloy* in which the Supreme Court held the Fifth Amendment applicable to the states. The standard expressed is in our view equally applicable to cases arising under the Fifth Amendment.

self-determined....'" *Id.* at 728 (quoting *Rogers,* 365 U.S. at 544, 81 S.Ct. at 741).

■ At the suppression hearing in this case, Walker testified:

> What was explained to Mr. Smith was that, he could not be promised no prosecution, but the best thing was to tell the truth and to get into counseling, so in the end his family could be reunited.... I explained that my experience with [the] District Attorney's Office is that, in cases where a person has a problem, if they go into counseling the District Attorney may not prosecute, but I could not promise that.... I explained the alternatives; that if there is a problem, [he] should admit it, and more than likely the D.A. will not prosecute if Mr. Smith gets into treatment. I cautioned him that I cannot promise no prosecution, that my experience is that the D.A. handled such cases in this manner.

In later testimony, Walker admitted that in this same conversation she told Smith that if he did not admit the abuse, he would definitely be prosecuted.

After a painstaking review of the record relating to this issue, we conclude that Smith could not have reasonably interpreted Walker's statements as a promise that he would not be prosecuted if he were to admit the abuse and seek counseling. Walker's statements were obviously equivocal, and she made it clear to Smith that she could not promise freedom from prosecution.

■ Walker's statement that Smith would be prosecuted should he choose not to admit his unlawful conduct also fails, in our view, to render his subsequent statements to the counselor involuntary. To render a subsequent statement involuntary, the tactics of the state actor must be so coercive as to overbear the defendant's will. *Kelly,* 603 S.W.2d at 728. Advice to an individual concerning the consequences of a refusal to cooperate is not objectionable. We view this statement as analogous to those made by law enforcement officers in *United States v. Crespo de Llano,* 838 F.2d 1006, 1015 (9th Cir.1987) and *United States v. Pelton,* 835 F.2d 1067, 1072–73 (4th Cir.1987). In *Crespo de Llano,* police officers, after having procured a search warrant, asked the defendant to reveal the location of the cocaine so "that they would not have to tear the house apart." *Crespo de Llano,* 838 F.2d at 1015. In *Pelton,* FBI officers advised the defendant that there would be a "full scale investigation" should he decide not to cooperate. *Pelton,* 835 F.2d at 1072. We agree with the Fourth Circuit that "[t]ruthful statements about [a defendant's] predicament are not the type of 'coercion' that threatens to render a statement involuntary." *Id.* at 1073.[12]

Finally, we note the six weeks interim between Smith's conversation with Walker and the counseling session. This delay further belies Smith's contention that Walker compelled his statements to the counselor.

Considering all of the circumstances, we conclude that the statements made by the defendant were not "compelled" in violation of the Fifth Amendment or Article I, § 9.

### IV

■ As his final point, Smith argues that the admission into evidence of his statements to the counselor violated his due process rights under the Fourteenth Amendment to the United States Constitution and Article I, § 8 of the Tennessee Constitution.[13] Under

---

12. In both *Crespo de Llano* and *Pelton,* the defendants relied on *United States v. Tingle,* 658 F.2d 1332 (9th Cir.1981). In *Tingle,* the young defendant had a two-year-old child. The arresting officer told Tingle that she was facing a potential sentence in excess of forty years (an exaggeration) and that if she did not cooperate, she would not see her child again for a very long time. We consider *Tingle* clearly distinguishable from this case. In this case, the defendant was not in custody, and Walker's statements were simply her prediction of the future course of events— events that would legally and predicably follow

in light of Walker's conversation with Smith and the victim.

13. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law...."

> Article I, § 8 of the Tennessee Constitution provides:
> > No man to be disturbed but by law. That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner

our holding in *Van Zandt v. State*, 218 Tenn. 187, 402 S.W.2d 130, 135 (1966), the "true test . . . is whether 'fundamental fairness' and 'substantial justice' . . . are absent or present."

■■■■■ At the outset, we reject any argument by the defendant that the legislature's abrogation of the counselor privilege in child sexual abuse cases contravenes the principles of due process under either the federal or state constitutions. Confidentiality privileges exist solely at the discretion of the legislature or the courts. Thomas R. Malia, Annotation, *Validity, Construction, and Application of Statute Limiting Physician–Patient Privilege in Judicial Proceedings Relating to Child Abuse or Neglect*, 44 A.L.R.4th 649 (1986). In Tennessee common law, there was no physician-patient privilege or psychotherapist-patient privilege. *Quarles v. Sutherland*, 215 Tenn. 651, 389 S.W.2d 249 (1965). While the legislature has seen fit to provide such privileges for certain confidential relationships, it has expressly abrogated the privilege in judicial proceedings relating to child sexual abuse. Tenn.Code Ann. § 37–1–614. As this privilege was created by statute, it is without a doubt subject to limitation or removal as the legislature may see fit. The legislature has determined that society's interest in exposing the sexual abuse of children transcends an accused's interest in the confidentiality of his or her communications regarding such abuse. *Id.; State v. Lyon*, 648 S.W.2d 957, 960 (Tenn. Crim.App.1982); *Adams v. State*, 563 S.W.2d 804, 809 (Tenn.Crim.App.1978)(both holding that the need to protect children outweighs the policy of protecting the marriage relationship and abrogating the marital privilege). The legislature has duly exercised its prerogative to subordinate the interest in preserving confidential communications to the interest in identifying and prosecuting child abusers; therefore, the defendant suffered no denial of due process by the mere application of the statutes to his circumstances.

■■■■ According to Smith, the strategy employed by Walker violated his due process rights, i.e., in a deliberate attempt to elicit the incriminating statements, Walker strongly encouraged Smith to seek counseling knowing that any statements he made to the counselor could be used in a subsequent prosecution.

■■■■ We emphasize that the counselor had an ethical obligation to advise Smith as to the limits of confidentiality in matters relating to child sexual abuse.[14] Failure to do so, however, does not necessarily require suppression of the defendant's statements, particularly where the statements were made in a non-custodial setting to a counselor not directly connected to the state. *State v. Mosher*, 755 S.W.2d 464 (Tenn.Crim.App. 1988). Further, there is no evidence that Walker communicated with the counselor or in any way interfered to prevent the counselor from informing Smith that his statements to her were not confidential. Absent evidence of interference by a state agent, we find no violation of due process in this case.

## V

To summarize, we conclude that the statements by the defendant to the counselor were not made in a custodial-interrogation setting that would warrant a *Miranda* advisement. Further, the incriminating statements were not compelled by impermissible threats or promises of leniency so as to render them involuntary. Moreover, the legislature has abrogated the counselor-patient privilege in cases of child sexual abuse. Because there is no evidence that Walker participated in the counselor's decision not to advise Smith of the absence of privilege, we find no due process violation.

Clearly, society has an interest in both the successful treatment of child sex abuse

---

destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

**14.** *See Jaffee v. Redmond*, —— U.S. ——, —— n. 12, 116 S.Ct. 1923, 1930 n. 12, 135 L.Ed.2d 337(1996)("At the outset of their relationship, the ethical therapist must disclose to the patient 'the relevant limits on confidentiality.' " American Psychology Association, Ethical Principles of Psychologists a Code of Conduct, Standard 5.01 (Dec.1992)).

perpetrators and the successful prosecution of these individuals. Thus, there exists a necessary tension between the two interests. While we harbor no desire to upset the delicate balance between these two interests, we are concerned that in their attempts to serve both, state agents may unwittingly create a situation in which neither is accomplished.

We do express the strongest disapproval of any practice whereby state agents encourage suspects to seek counseling for the purpose of eliciting incriminating statements for use in a subsequent prosecution. Walker's statements to Smith were on the line, but did not cross it.

For the reasons stated herein, the judgment of the Court of Criminal Appeals is affirmed.

DROWOTA and ANDERSON, JJ., concur.

REID and WHITE, JJ., dissent in separate opinions.

REID, Justice, dissenting.

The majority makes reference to relevant decisions of this Court and the United States Supreme Court and sets forth the controlling legal principles. However, the majority errs, in my view, in concluding, based on those principles, that the defendant's incriminating statements were admissible as evidence of his guilt. In my view, the record shows that the defendant's incriminating statements were, in fact, not free and voluntary but were obtained by improper influence, both the threat of prosecution and the promise to forebear prosecution, in violation of Article I, Section 9 of the Constitution of Tennessee and the Fifth Amendment to the Constitution of the United States.

The defendant was convicted on statements made to Tracy Walker, the DHS member of a statutory investigating team,[1] and on statements made to a mental health counselor, to whom the defendant was referred by Walker and who violated the ethical obligation to advise the defendant that his statements were not privileged.

Walker's account of the advise given the defendant, which is relied upon by the ma-

jority, is in summary form, phrased as conclusions rather than an account of the conversation between her and the defendant. Nevertheless, there hardly could be a clearer case of the State threatening a penalty if the privilege against self-incrimination should be asserted and promising a reprieve should the defendant confess and accept counseling.

> What was explained to Mr. Smith was that, he could not be promised no prosecution, but the best thing was to tell the truth and to get into counseling, so in the end his family could be reunited.... I explained that my experience with [the] District Attorney's Office is that, in cases where a person has a problem, if they go into counseling the District Attorney may not prosecute, but I could not promise that.... I explained the alternatives; that if there is a problem, [he] should admit it, and more than likely the D.A. will not prosecute if Mr. Smith gets into treatment. I cautioned him that I cannot promise no prosecution, that my experience is that the D.A. handled such cases in this manner.

Majority opinion, page 456.

The DHS agent's testimony, not surprisingly, begins with the explanation that the defendant could not be promised that he would not be prosecuted. However, according to her testimony, she hurried to advise "the best thing" for the defendant was to admit the crime and accept counseling. This was the "best thing" because "his family could be reunited." This expectation of benefit offered the defendant for confessing was validated by "her experience" that a person who "has a problem" "may not" be prosecuted if that person admits the abuse and accepts counseling. The "may not prosecute" language was then supplemented with "more than likely the DA will not prosecute." Walker again supported the reliability of her advice by reference to her experience with the District Attorney General.

The statements made by Walker clearly were an offer of leniency if he would confess and a threat of prosecution if he did not confess. Walker's disclaimer that she could not promise no prosecution did not eliminate

---

**1.** Tenn.Code Ann. § 37–1–607(a)(3) (1996).

the coercive nature of her advice. The promise and threat combination, under the circumstances of this case, likely was more coercive than physical force. To a person in the defendant's circumstances, what could be more coercive than a reasonable expectation that he would not be prosecuted and would be reunited with his wife and child?

Since, as observed by the majority,[2] the courts have not been able to articulate a reliable test for voluntariness, comparison of the facts in this case with those in prior cases is of little help. Although difficult to define accurately, voluntariness in a particular situation is easily recognized. When the facts of this case are applied to the rule of law announced by the majority, the conclusion is obvious. The defendant's confession was not "free and voluntary; that is, ... not extracted by any sort of threats ..., nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *See* Majority Opinion, page 455.

Walker was a state agent, charged with investigating the criminal offense and preserving evidence for future prosecution.[3] She successfully accomplished that result, she obtained the most damning evidence possible—admission by the accused that he committed the offense. The trial judge's characterization of the state's conduct is accurate and eloquent—"you mouse-trapped him." Notwithstanding the majority's severe admonition,[4] the opinion will encourage state agents to operate on the brink of constitutional error, confident this Court will not notice inquisitional zealousness.

Constitutional principles are mere illusions unless they are given effect in the real world, even for the benefit of persons charged with detestable crimes. Who can say that society's best interests (including those of the innocent victim) would not have been better served had the constitution been honored, the defendant afforded treatment, and prosecution held in abeyance, all as outlined by Tracy Walker.

In my view, the confession was obtained in violation of Article I, Section 9 of the Constitution of Tennessee and the Fifth Amendment to the Constitution of the United States, and the motion to suppress should have been granted.

WHITE, Justice, dissenting.

I am unable to agree with the result reached by the majority in this case. While the analysis of the case under *Miranda* standards is certainly accurate, it does not follow that the method and manner of interrogation should be sanctioned by the highest court in the state. Our obligation goes beyond following well-established precedent; we must also assure that fundamental fairness is accomplished in our courts. In my opinion, the conclusion reached by the majority, despite its consistency with prior decisions, is fundamentally unfair. Additionally, the opinion encourages the state to use overreaching methods to secure confessions. I cannot agree with the result in this case or the consequences of such a decisions.

Under state law, the Department of Human Services is a part of an investigatory team created to reduce the trauma and enhance the effectiveness of child sexual abuse investigations. Tenn.Code Ann. § 37–1–607(a)(3)(1991 Supp.). The other team members include a representative from the district attorney's office, a juvenile court officer or investigator, and a law enforcement officer. The statute charges the team with the duty to "preserve[ ] any evidence for future criminal prosecution." *Id.* Clearly each member of the team functions as an agent of the state whose obligation it is to investigate allegations of child sexual abuse and gather evidence for prosecution.

The circumstances of this case support a finding that defendant's confession was not voluntarily given, but was prompted by implied promises and improper influence. When defendant's wife confronted him with the allegations made by his stepdaughter, defendant and his wife voluntarily sought the help of Christian counselors. After those sessions, defendant and his wife decided to report the allegation to the Department of Human Services.

2. Majority opinion, page 455.

3. Tenn.Code Ann. § 37–1–607(a)(3).

4. *See* majority opinion, page 457.

From the beginning, defendant expressed grave concern about losing his family. The DHS worker described his as "distraught" over the situation. Upon hearing that concern, the DHS worker advised defendant that "the best thing was to tell the truth and to get into counseling so in the end his family could be reunited." Further, the DHS officer "explained the alternatives; that if there is a problem, should admit it, and more than likely the D.A. will not prosecute if [defendant] gets treatment." Certainly she did not guarantee defendant that he would avoid prosecution by admitting the offense and seeking treatment. She could not immunize him from prosecution and she did not. She did, however, assure defendant that he would be prosecuted if he did not seek treatment.

As a result of their conversations, the counselor referred defendant to the Luton Mental Health Center. In continual cooperation with the counselor's suggestion, defendant went to the mental health center and met with a counselor. There he admitted that he had committed the unlawful sexual act. His admission to the counselor was made without the knowledge that state law abrogated the patient-counselor privilege for communication relates to child sexual abuse. Tenn.Code Ann. § 37–1–614 (1991 Supp.)

While the majority's conclusion that this statement was not a custodial one is obviously correct, it does not follow that it is admissible. As the majority notes, the test for voluntariness under Article I, Section 9 of the Tennessee Constitution is more protective of individual rights than the test under the Fifth Amendment to the United States Constitution. In order to be admissible, the confession must be "the product of a free and deliberate choice.... Moreover, the waiver must be made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *State v. Stephenson,* 878 S.W.2d 530, 544–45 (Tenn.1994). In the final analysis, the issue is whether the admission of the confession

accomplishes "fundamental fairness" and "substantial justice." *Van Zandt v. State,* 218 Tenn. 187, 402 S.W.2d 130, 135 (1966).

I conclude that the admission of defendant's confession under the circumstances of this case offends the notion of fundamental fairness and fails to accomplish substantial justice. Clearly, defendant trusted the DHS worker to advise him as to how he might preserve his family. He confronted her with that concern and she undertook to advise him. While she did not guarantee that counseling would forestall prosecution, she did assure him that if he did not seek counseling, he would be prosecuted. Based on her advice, defendant sought counseling [1] and, as it was suggested, admitted the problem. Unbeknownst to defendant, his communications to his counselor were not privileged, but were used to prosecute and convict him. Under these circumstances, the state has not met its burden, in my opinion, of showing that defendant's confession was the product of a voluntary, free will.

---

1. The majority finds that the six-week delay between defendant's conversation with the DHS worker and his counseling appointment "belies [the] contention that Walker compelled his statements to the counselor." I disagree. Nothing happened during this interim period to remove the very clear message from defendant's mind: go to counseling, admit the act, and you most

likely will be reunited with your family. Defendant made the appointment indicating a desire to follow the DHS worker's instructions. Her advice had to that point been validated by the fact that he had not been arrested. Hence, it was sensible to continue to follow that advice at the counseling session.