IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 17, 2004 Session

## STATE OF TENNESSEE v. WELTHA WOMACK

**Appeal from the Criminal Court for Knox County**
**No. 69868       Richard Baumgartner, Judge**

---

**No. E2003-02332-CCA-R3-CD - Filed January 4, 2005**

---

The Appellant, Weltha Womack, was convicted by a Knox County jury of one count of aggravated rape, a class A felony, and two counts of misdemeanor assault, resulting in an effective fifteen-year sentence. On appeal, Womack raises the following issues for our review: (1) the voluntariness of his statements to the police; (2) whether the trial court erred by permitting the State to amend the presentment on the morning of trial; (3) whether the trial court properly instructed the jury with regard to the requisite mental state for aggravated rape; and (4) whether the prosecutor's comments constituted prosecutorial misconduct in its closing argument. After review, we find merit with regard to issues (1) and (3) with respect to Womack's conviction for aggravated rape. Accordingly, the judgment of conviction for aggravated rape is reversed, and this case is remanded for a new trial consistent with this opinion.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Mark E. Stephens, District Public Defender; and John Halstead, Assistant Public Defender, Knoxville, Tennessee.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Brent C. Cherry, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leland Price, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

Around July 1999, the victim, A.W.,[1] reported to the Department of Children Services in Montgomery County that she had recently been sexually molested by her grandfather, the Appellant, while visiting him in Knoxville. The victim further reported that her grandfather had first molested her when she was four years old. At the time the report was filed, the sixteen-year-old victim lived with her parents in Clarksville where her father was stationed at Fort Campbell. The seventy-year-old Appellant is the fraternal grandfather of the victim. The victim's complaint was forwarded to the Knoxville Police Department for investigation.

The Appellant was contacted by Investigator Ron Neal of the Knoxville Police Department and voluntarily came in for questioning. During the first interview, conducted on September 9, 1999, the Appellant initially denied any wrongdoing. However, during the course of the interview, he did admit touching the victim's breast in June of 1999 while she was in the bathroom. The Appellant stated that the victim had had a bladder problem when she was a young child and that he had touched her in the vaginal area to check for wetness. The Appellant returned on September 24, 1999, for a second interview. During this interview, the Appellant admitted that he "may have . . . tickled her on her . . . [vagina] once, maybe twice." However, during both interviews, he consistently denied that any of his actions were done for a sexual purpose.

On January 27, 2000, a Knox County grand jury returned a five-count presentment against the Appellant charging him as follows:

> Count One: rape of a child, alleging sexual penetration of the victim on "diverse [sic] days" between "the ___ day of July 1986 and the ___ day of July 1990," in violation of Tennessee Code Annotated section 39-13-522;
>
> Count Two: rape of a child, alleging sexual penetration of the victim on "diverse [sic] days" between "the ___ day of July 1986 and the ___ day of July 1990," in violation of Tennessee Code Annotated section 39-13-522;
>
> Count Three: aggravated sexual battery, occurring on "diverse [sic] days" between "the ___ day of July 1994 and the ___ day of July 1995," in violation of Tennessee Code Annotated section 39-13-504;

---

[1] In order to protect the identity of minor victims of sexual abuse, it is the policy of this court to refer to the victims by their initials. *State v. Schimpf*, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

Count Four: sexual battery, occurring on "diverse [sic] days" between "the ___ day of January 1996 and the ___ day of December 1996," in violation of Tennessee Code Annotated section 39-13-505; and

Count Five: sexual battery, that occurred on or about the ___ day of June 1999, in violation of Tennessee Code Annotated section 39-13-505.

On the morning of trial, the State orally moved to amend counts one and two, which both alleged rape of a child in violation of Tennessee Code Annotated section 39-13-522, to the crime of aggravated rape. Over objection, the trial court granted the motion permitting amendment of counts one and two to reflect charges of aggravated rape in violation of Tennessee Code Annotated sections 39-2-603 and 39-13-502.

At trial, the proof established that the victim, A.W., whose date of birth is July 27, 1982, lived with her parents and older sister in Knoxville as a small child. While there, the victim regularly stayed at the home of her grandparents while her parents worked. Oftentimes the victim's grandfather, the Appellant, would take the victim to school. The victim related that during her visits to the Appellant's house, he would play with her clitoris and insert his finger into her vagina. She stated this first occurred when she was four years old and continued until the family moved to Germany when she was eight. The victim specifically remembered two occasions on which she was sexually abused:

A. . . . I believe he was taking me to school and he, again, you know, reached his hand down into my pants and fondled my vagina and just — I remember we were at the gas station, and we were on — I think on the way to drop me off at school, because we're — we're going [sic] that area.

Q. Do you remember which school?

A. It was Pond Gap Elementary.

Q. Do you remember what grade you were in?

A. I believe I was probably in the second grade, second or third.

Q. And you say he touched you?

A. Yes, sir.

Q. Can you describe specifically what happened?

A. He placed his hand on my vagina and continued to play with my clitoris, and he inserted his finger into my vagina.[2]

With regard to the second occasion, the victim recalled:

A. I remember sitting on his lap in his house, close to the kitchen. My grandmother had just gone out to take out the clothing that she had washed . . . She hung her clothes out on the clothesline outside, and she would go out the door towards — around the kitchen and he — he waited for her to leave, and he told me to sit on . . . his lap . . . And he placed his hands in my pants again. . . .

Q. He asked if you liked it, asked you to come sit on his lap. Then what happened?

A. He — he put his hand inside of my pants and —

Q. Once he did that what did he do?

A. And he — he — I'm sorry. He played with my clitoris and inserted his finger into my vagina.[3]

The victim further stated that in 1999 she and her family returned to Knoxville for a family member's wedding. During this visit she stayed at the Appellant's home. She related that, while she was in the bathroom, the Appellant came up behind her, fondled her breasts for three to four seconds, and told her that her breasts were becoming developed and were nice. The victim pushed the Appellant away and told him "no."[4]

The victim verified that she had a pronounced bladder control problem as a youth and that it was not unusual for her family to bring her clean clothes to school. This problem was confirmed by the victim's mother who testified at trial. The State also called Detective Ron Neal who introduced the Appellant's statements from the two interviews.

At the close of the State's proof, the trial court granted the Appellant's motion for a judgment of acquittal with regard to count three, which alleged aggravated sexual battery, and count four, alleging sexual battery. Based upon the proof presented, the jury returned a verdict finding the Appellant guilty of misdemeanor assault under count one, guilty of aggravated rape under count two, and guilty of misdemeanor assault under count five. The Appellant was later sentenced to fifteen years for the aggravated rape conviction, to be served concurrently with the two six-month sentences

---

[2]These facts form the basis for count one which was amended to charge aggravated rape.

[3]These facts form the basis for count two which was amended to charge aggravated rape.

[4]These facts form the basis for count five.

for the assault convictions. The Appellant's motion for new trial was denied, with this appeal following.

**Analysis**

**I. Admissibility of Statement**

As his first issue, the Appellant contends that portions of his second statement to the police were obtained involuntarily and, thus, should not have been admitted at trial.

The findings of fact made by the trial court at a hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is best able to assess the credibility of witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Id.* (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). However, this court is not bound by the trial court's conclusions of law. *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court is a question of law that this court reviews *de novo*. *State v. Daniels*, 12 S.W.3d 420, 423 (Tenn. 2000).

The proof on this issue established that the Appellant agreed to meet with Detective Ron Neal of the Knoxville Police Department at the police station to discuss the Department of Children Services complaint that had been filed by the victim. The first interview lasted approximately one hour. At this meeting, the Appellant was advised of his rights and was told that he could leave at any time he wished. He was further advised that his statements and responses would be given to the Child Protection Investigative Team and that the district attorney general would then make the decision of whether to prosecute the case. The first interview was not recorded. At this interview, the Appellant denied any criminal wrongdoing.

Just prior to the second interview, the Appellant was given a polygraph test. After completion of the test, the Appellant was advised by Detective Neal that he had failed. The Appellant, however, persisted in his denial of any criminal conduct. He readily admitted that he had touched the victim on many occasions but only because she had a serious bladder control problem and that she would never tell him or his wife when she had "wet" on herself. Approximately midway into this thirty-five-minute interview, the following colloquy transpired:

[Detective]: Our job is to take [the complaint] to court.

[Appellant]: Okay.

[Detective]: It's [A.W.'s] job to get . . . take it to counseling, okay?

[Appellant]: Okay.

[Detective]: Uh . . . I . . . what I'm hoping we can do . . . uh . . . is put a closure to this for [A.W.] and you.

[Appellant]: Do what, sir?

[Detective]: To close it out for you and [A.W.].

[Appellant]: Okay.

[Detective]: And . . . it would be nice if we could do it without a lawyer . . . a court battle.

Almost immediately thereafter, the Appellant responded:

[Appellant]: . . . I may have uh . . . tickled her on her . . . upper part there . . . uh . . . that . . .

[Detective]: What do you mean by "tickled her?"

[Appellant]: Maybe just rub my finger on it, you know. . . .

[Detective]: I understand that. Uh . . . so you're saying now that you might have tickled the top of her vagina . . . on her pants . . . just not inside.

[Appellant]: Maybe to her that was penetration. . . .

The Appellant argues that the statement by Detective Neal, in addition to the prior "minimization techniques" employed by the Detective,[5] led to the above inculpating statements. He contends that the Detective's statement "to close it out for you and [A.W.]" can only be interpreted as an implied promise to keep the case out of court. As such, he contends that the inculpating statements which followed were improperly induced. We agree.

Confessions that are involuntary, *i.e.,* the product of coercion, whether it be physical or psychological, are not admissible. *Rogers v. Richmond*, 365 U.S. 534, 540, 81 S. Ct. 735, 739 (1961). The test for voluntariness under the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the United States Constitution. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). For a confession to be admissible, it must be "free

---

[5]The Appellant also complains of certain so-called minimization techniques utilized by the Detective such as: (1) asserting the reliability of the polygraph test and the similarity in his statements to the victim to convince the Appellant he would be convicted; (2) informing the Appellant he would not be arrested that day no matter what was said; (3) discussing the availability of counseling; (4) asking the Appellant's opinion on a second chance for someone who committed a crime of this nature; and (5) telling the Appellant that what he did may have been totally innocent. We agree with the trial court that these techniques employed by the Detective were not in error.

and voluntary; that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence . . . ." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996) (quoting *Bram v. United States*, 168 U.S. 532, 542-43, 18 S. Ct. 183, 187 (1897)).

In determining the admissibility of a confession, the particular circumstances of each case must be examined as a whole. *Smith*, 933 S.W.2d at 455; *see also State v. Phillips*, 30 S.W.3d 372, 377 (Tenn. Crim. App. 2000). A defendant's subjective perception alone is not sufficient to justify a conclusion of involuntariness in the constitutional sense. *Smith*, 933 S.W.2d at 455 (citations omitted). Rather, "coercive police activity is a necessary predicate to finding that a confession is not voluntary. . . ." *Id.* (citations omitted).

However, an officer's promise of leniency does not render a subsequent confession involuntary *per se*, for "[t]he critical question is 'whether the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined. . . .'" *Id.* at 455-56. Accordingly, we must determine whether the Appellant's statement was "compelled" or induced by a promise of leniency under the totality of the circumstances surrounding the statement.

In *Smith*, the Tennessee Supreme Court concluded that a social worker's statement to the defendant, that the district attorney might forego prosecution if the defendant were truthful and received counseling, was equivocal and could not reasonably be interpreted as a promise that no prosecution would follow. *Id.* at 456. The court further concluded that a statement that the defendant would be prosecuted if he chose not to admit to unlawful conduct was insufficient to render his subsequent statement involuntary. *Id.* Under all the circumstances, the court concluded that the defendant's statements were not "compelled" in violation of the state or federal constitution. *Id.* However, the court noted that the interrogator's remarks were "on the line, but did not cross it." *Id.* at 458. The court expressed "the strongest disapproval of any practice whereby state agents encourage suspects to seek counseling for the purpose of eliciting incriminating statements for use in a subsequent prosecution." *Id.*[6]

In *Phillips*, the defendant drove himself to the Department of Human Services for an interview regarding the alleged sexual abuse of his stepdaughters. *Phillips*, 30 S.W.3d at 374. The investigators interrogated the defendant for about one hour, and, although he repeatedly and steadfastly denied any sexual misconduct for much of the interview, the defendant finally admitted to sexually abusing one of his stepdaughters. *Id.* This court reviewed a thirty-six page transcript of the interrogation of the defendant which revealed: (1) misrepresentations by an investigator; (2) numerous steadfast denials by the defendant; (3) statements that law enforcement officials would be involved if the defendant did not confess to sexually abusing his stepdaughter; and (4) promises for treatment for the defendant and his stepdaughter only if he fully confessed to the crimes. *Id.* at 377.

---

[6] We note that two Tennessee Supreme Court justices filed separate dissenting opinions in this case finding that the confession was not voluntarily given.

The promises and inducements were made repeatedly by the investigators prior to the defendant's confessions. *Id.* The court concluded that "[t]he actions of the interrogators were much more coercive than those found in *Smith*, and unlike *Smith*, crossed the line." *Id.*

In this case, the record establishes that the Appellant voluntarily appeared for both relatively lengthy interviews. Detective Neal testified that, on both occasions, he explained to the Appellant that he was free to leave at any time and that no matter what was said, the Appellant would not be arrested. Neal also testified that he explained the process of these types of investigations, including that no arrests would be made until after the case was presented to the Child Protection Investigative Team and the district attorney, who would then make the decision whether to prosecute the case. Additionally, Neal stated that he informed the Appellant of his *Miranda* rights, which the Appellant acknowledged.

During argument at the motion to suppress hearing, the State admitted that the statement in question "is approaching the line of saying, 'Well, we're not – we're not going to prosecute,' . . . You know, honestly, to be quiet candid, I'd rather them not talk about keeping lawyers out and everything like that. I'd rather that not have been said, but it was said . . . ." However, the State argued that Detective Neal's statement was not an unambiguous promise not to prosecute. The State contends that the Appellant knew that Neal could not fulfill such a promise because the entire process, including the fact that Detective Neal did not make the decision to prosecute, was explained to the Appellant. The trial court concluded that, although it would have preferred that Neal's statement not have been made, it was not an unambiguous *quid pro quo* offer which rendered the statement involuntary.

After review of the challenged statement, we find that, under the totality of the circumstances, the statement by Detective Neal could only be reasonably interpreted by the Appellant as a promise to avoid prosecution in exchange for his confession. While both the State and the trial court relied upon the explanation Neal gave to the Appellant at the start of the interview, that the district attorney made the decision to prosecute the case, certain statements made during the course of the interview tend to contradict this position. On page 13 of the interview, Neal states: "This is going to be a uh . . . long drawn out procedure. Because *I* have enough to go to court with it." (emphasis added). On page 15 of the interview, immediately prior to the statements in question, when the Appellant raised the possibility of counseling, Neal responded: "Our job is to take it to court." Thus, in the context of the statement by Neal about avoiding a court battle, these statements, spoken only a few moments earlier, could clearly reinforce the belief that Neal had the authority to keep the case from a courtroom. Additionally, we would note that almost immediately after this statement was made by Neal, the Appellant ceased his repeated denials of touching the victim for sexual purposes and admitted he might have tickled her vagina once or twice. There is no issue of credibility in this case, as it only involves application of the facts to the law. Although we believe the police conduct falls between *Phillips* and *Smith*, we find that the improper inducement is more aligned with the circumstances in *Phillips* than in *Smith*. We conclude that the Appellant's inculpatory statements which followed were secured by an implied promise and, as such, were involuntarily given. Thus,

-8-

any inculpatory statements made by the Appellant after Detective Neal's statement that he hoped "to close it out for you and [A.W.]" were improperly admitted.

## II. Amendment of the Presentment

Second, the Appellant asserts that the trial court erred in granting the State's request to amend counts one and two of the presentment on the morning of trial from rape of a child to aggravated rape, to reflect the statute which was in effect at the time the offenses were committed. The Appellant asserts that it was error to permit the amendment because it resulted in the charging of a different offense due to different applicable mental states, a violation of Rule 7 of the Tennessee Rules of Criminal Procedure.[7]

Counts one and two of the presentment contain identical language with each alleging: "On or about the ____ day of July, 1986, and on diverse [sic] days between that date, and the ____ day of July, 1990, [the Appellant] . . . did unlawfully and recklessly[8] sexually penetrate [A.W.], a child less than thirteen (13) years of age, by placing his finger in the vagina of [A.W.], in violation of T.C.A. 39-13-522. . . ."[9] On the morning of trial, the State apparently realized that rape of a child, as defined by Tennessee Code Annotated section 39-13-522, was not enacted until 1992, well after the dates alleged in the presentment. The State then moved to amend the offense in each count to that of aggravated rape. The State posited that because the elements of rape of a child and aggravated rape of a victim less than thirteen years of age, as defined by Tennessee Code Annotated section 39-13-502, were the same, no prejudice would occur. The State, however, acknowledged that during the four-year time frame alleged in counts one and two, two different statutory offenses of aggravated rape were in effect. First, from July 1986 until November 1, 1989, Tennessee Code Annotated section 39-2-603 governed the charge of aggravated rape, which was defined as an "unlawful sexual penetration of another accompanied by any of the following circumstances: . . . (4)

---

[7]Rule 7(b), Tennessee Rules of Criminal Procedure, provides that no amendment may be made to an indictment, without the defendant's consent, if an additional offense is charged and if any substantial right of the defendant is prejudiced.

[8]The presentment charges that the Appellant "recklessly" sexually penetrated the victim. As discussed *infra*, this is error. Nonetheless, the error does not require invalidation of the instrument. *See State v. Hill,* 954 S.W.2d 725, 729 (Tenn. 1997).

[9]As noted above, the two open-dated counts of the presentment charge the same offense and allege the same time frame for the commission of the offenses. At the close of the proof in the case, the State elected two separate occurrences of aggravated rape, which it submitted to the jury under these respective counts. Although not raised as error, we know of no authority which would allow this procedure. Indeed, this practice in certain cases would effectively circumvent Tennessee Rules of Criminal Procedure 8(b) and 13(a), and Tennessee Rules of Evidence 404(b). Our supreme court has characterized the practice of permitting the admission of multiple acts of sexual misconduct into evidence from a single open-dated indictment as a "special rule." *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The rule further provides, "the State must elect at the close of its proof-in-chief *as to the particular incident* for which a conviction is being sought." *Id*. (emphasis added). We would acknowledge the use of multi-count, open-dated indictments for separate statutory crimes or for separate defendants. Again, because this issue has not been raised or briefed, we leave its resolution for another day.

The victim is less than thirteen years old." From November 1989 until the end of the period covered in the presentment, Tennessee Code Annotated section 39-13-502 defined aggravated rape as the "unlawful sexual penetration of a victim by the defendant or the defendant by the victim accompanied by any of the following circumstances: . . . (4) The victim is less than thirteen (13) years of age."[10] The current section of the code, which was enacted in 1992, Tennessee Code Annotated section 39-13-522, defines the offense of rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522 (2003).

It is uncontested that each of the three statutes in question prohibited the unlawful sexual penetration of a victim less than thirteen years of age. The Appellant does not question the similarity of these elements. Rather, he argues that the pre-1989 aggravated rape offense, Tennessee Code Annotated section 39-2-603, was a general intent crime, whereas the mental states of intentional, knowing, or reckless applied to the crime of aggravated rape after November 1, 1989. Tenn. Code Ann. § 39-11-301(c) (2003). The trial court instructed the jury only under the provisions of Tennessee Code Annotated section 39-13-502. The Appellant contends that under this charge, the jury was instructed that the mental states of intentionally, knowingly, or recklessly were applicable to the elements of aggravated rape. Thus, the Appellant argues that under this instruction, the jury was permitted to find him guilty of aggravated rape based upon a finding that he recklessly penetrated the victim.[11] As such, he argues that the two crimes of aggravated rape constitute different offenses, as the pre-1989 common law crime did not permit a conviction based upon the mental state of recklessness.

We would agree that the pre-November 1, 1989 offense of aggravated rape was a crime originating from common law. *State v. Wilkins*, 655 S.W.2d 914, 916 (Tenn. 1983). Although the crime before us is aggravated rape, our supreme court has recognized that this offense is but an aggravated form of the common law offense of rape. *Id.* Rape was a general intent crime at common law for which a culpable mental state was necessary but easily inferable from the conduct which comprised the offense. *Dykes v. Compton*, 978 S.W.2d 528, 530 (Tenn. 1998). The Model Penal Code, from which our current statutory culpable mental states are derived, discarded the language of general and specific intent in favor of "intentionally," "knowingly," "recklessly," and "criminal negligence." Tenn. Code Ann. § 39-11-301, Sentencing Commission Comments. In general, however, "intentional" corresponds loosely with the common law concept of specific intent, while "knowingly" corresponds loosely with the concept of general intent. *State v. James Dison*, No.

---

[10]We note that the Sentencing Commission Comments to Tennessee Code Annotated section 39-13-502 state that the former "subdivision (a)(4), concerning rape of a child less than thirteen years of age, has been moved to § 39-13-522."

[11]This issue is further compounded by the dilemma of determining which statute was operative on the date the crime of aggravated rape was committed. The victim testified that she was "approximately seven" on the date she was sexually penetrated. The victim would have turned seven on July 27, 1989, and accordingly, remained seven until July 26, 1990. Based upon this proof, the crime could have been committed under Tennessee Code Annotated sections 39-2-603 or 39-13-502.

03C01-9602-CC-00051 (Tenn. Crim. App. at Knoxville, Jan. 31, 1997) (citing *United States v. Bailey*, 444 U.S. 394, 405, 100 S. Ct. 624, 632 (1980)).

Accordingly, we agree with the Appellant that prior to November 1, 1989, a defendant could not be convicted of aggravated rape based upon a "reckless" sexual penetration of the victim. This, however, is precisely the rule today as under our current criminal code that no defendant may be convicted of aggravated rape based upon a "reckless" sexual penetration of the victim. Thus, the error in this case is not attributable to an improper amendment of the presentment, rather it stems from an improper charge to the jury.

### III. Improper Instruction with Regard to Mental State of "Recklessness"

This appropriately raises the Appellant's third issue of whether the trial court committed error "when the jury was instructed that they could find Appellant guilty of aggravated rape if he acted recklessly." We begin our analysis with a review of the statutory provisions relevant to this issue.

Because the definitions of all sexual offenses under part 5 of our criminal code do not contain a mental element, the mental elements of intent, knowledge, or recklessness will suffice to establish the culpable mental state. Tenn. Code Ann. § 39-11-301(c). However, sex offenses may have more than one mental state. *See State v. Parker*, 887 S.W.2d 825, 827 (Tenn. Crim. App. 1994). It is the obligation of the trial judge to instruct the jury with regard to the applicable mental state "as the definition of the offense requires, *with respect to each element of the offense*." Tenn. Code Ann. § 39-11-301(a)(1) (emphasis added).

Furthermore, our criminal code directs that no person may be convicted of a criminal offense unless "[t]he conduct, circumstances surrounding the conduct, or a result of the conduct described in the definition of the offense[ ]" be proven beyond a reasonable doubt. Tenn. Code Ann. § 39-11-201(a)(1) (2003). Thus, our code specifically defines three types of possible elements of which one or more may be found in the definition of any criminal offense. The type or types of elements defined in the offense determines which applicable portion of the mental state definitions of "intentional," "knowing," "reckless," or "criminal negligence" should be charged to the jury. The first element, conduct, involves the nature of the proscribed act or the manner in which the defendant acts, *e.g.*, the physical act of committing an assault, or the physical restraint of another person (kidnapping). The second element, circumstances surrounding the conduct, refers to a situation which relates to the actor's culpability, *e.g.*, lack of victim's consent or stolen status of property. The result of the defendant's conduct constitutes the final element; in other words, the accused's conduct must at least be a physical cause of the harmful result, *e.g.*, causing the death of another. *State v. Jennie Bain Ducker,* No. 01C01-9704-CC-00143 (Tenn. Crim. App. at Nashville, Mar. 25, 1999), *aff'd on other grounds*, 27 S.W.3d 889 (Tenn. 2000). Generally, an offense may be classified as a result-of-conduct offense when the result of the conduct is the only element contained in the offense. *Ducker*, 27 S.W.3d at 896. An example of a result-of-conduct offense is second degree murder, which is defined as a "knowing killing of another." *Id*. The "nature of the conduct" that causes

-11-

death or the manner in which one is killed is inconsequential under the second degree murder statute. *Id.*

As previously noted the trial judge instructed the jury that to find the defendant guilty of aggravated rape, they were required to find in relevant part "(1) that the defendant had unlawful sexual penetration of [the victim] . . ." and "(3) that the defendant acted either intentionally, knowingly, or recklessly."

The Appellant argues that this instruction was error because aggravated rape is a nature of conduct crime, and the charge as given would permit conviction upon a finding of reckless penetration. The crime of aggravated rape requires by definition sexual penetration of the victim. Thus, it is the nature of the proscribed conduct, *i.e.* sexual penetration, which constitutes the crime. Accordingly, we conclude that aggravated rape as charged is a nature of conduct crime. *See State v. Chester Wayne Walters*, No. M2003-03019-CCA-R3-CD (Tenn. Crim. App. at Nashville, July 20, 2004) (holding that unlawful sexual penetration of the victim is both nature of conduct and result of conduct); *State v. Jeffrey L. Marcus*, No. W2000-02698-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 23, 2002), rev'd on other grounds, 109 S.W.3d 300 (Tenn. 2003) (holding the offenses of aggravated sexual battery and rape of a child are nature-of-conduct offenses, in that the offenses seek principally to proscribe the nature of the defendant's conduct); *Ducker*, 01C01-9704-CC-00143 (noting that nature of the conduct involves the physical act and that result of the conduct is the harmful result).

Based upon the statutory definitions of the following mental states, it is apparent that "intentional" refers to the nature of the conduct or to a result of the conduct, "knowing" refers to the nature of the conduct, circumstances surrounding the conduct, and the result of the conduct, and "reckless" refers to the result of the conduct or to the circumstances surrounding the conduct. Tenn. Code Ann. § 39-11-302(a),(b) and (c). Accordingly, in this case, which involves a nature of conduct crime, it was error to charge the mental state definition of "reckless" with respect to the element of sexual penetration. Generally, only the culpable mental states of "intentional" and "knowing" are applicable to nature of conduct crimes. *State v. Deji A. Ogundiya*, No. M2002-03099-CCA-R3-CD (Tenn. Crim. App. at Nashville, Feb. 19, 2004).

In instructing the jury, the trial judge must limit its charge of the applicable mental state to the element or elements of the offense charged. As demonstrated in this case, the submission of all three mental states to each of the elements of the crime altered the State's burden of proof, thus permitting a conviction based upon reckless sexual penetration.

The defendant has a constitutional right to a correct and complete charge of the law. A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law. *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995)). An erroneous jury instruction, which misstates the applicable conduct element of an offense and lessens the State's burden of proof, is subject to constitutional harmless error analysis. *State v. Page*, 81 S.W.3d 781,

789 (Tenn. Crim. App. 2002). As in *Page*, the *mens rea* of the Appellant was, in large part, a central issue at trial. *Id*. at 789. The Appellant does not deny that he touched the victim's genital area, rather he denies that the touching was for any sexual purpose. In view of this fact and the erroneous admission of the Appellant's involuntary statements, we are unable to conclude that the jury instruction error was harmless beyond a reasonable doubt. Tenn. R. Crim. P. 52(a). Accordingly, we reverse and remand for a new trial.

## IV. Prosecutorial Misconduct

Last, the Appellant asserts that the State committed reversible error in their closing arguments. Specifically, he asserts that the State "lauded the victim's courage in coming forward with the charges, thus bolstering her integrity and credibility, and the State said the jury had to show the same courage as the victim by convicting Appellant," resulting in violations of his rights to due process and a fair trial. *See State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (setting forth categories of improper argument).

The State correctly argues that the Appellant has waived this issue by his failure to lodge a contemporaneous objection at trial or to raise the issue in his motion for new trial. Typically these omissions result in a waiver on appeal of any complaint concerning the prosecutor's comments. Tenn. R. Crim. P. 37(e) and 36(a); *State v. Thornton*, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999); *State v. Green*, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). Thus, if this court is to review the Appellant's claim of prosecutorial misconduct, we must do so utilizing plain error review pursuant to Tenn. R. Crim. P. 52(b) which provides: "An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice."

This court has, in its discretion, from time to time reviewed allegations of prosecutorial misconduct as "plain error" even in the absence of a contemporaneous objection. *See State v. Marshall*, 870 S.W.2d 532 (Tenn. Crim. App. 1993); *State v. Butler*, 795 S.W.2d 680 (Tenn. Crim. App. 1990); *Anglin v. State*, 553 S.W.2d 616 (Tenn. Crim. App. 1977). In this case, however, we do not elect to exercise our discretion to review under plain error as it is not necessary to do substantial justice as the case is being reversed on other grounds.

**CONCLUSION**

Based upon the foregoing, the case is remanded to the Knox County Criminal Court for a new trial with respect to the Appellant's conviction for aggravated rape consistent with this opinion.[12]

_____
DAVID G. HAYES, JUDGE

---

[12]Because no issue was raised with regard to the Appellant's two misdemeanor convictions in the motion for a new trial nor specifically addressed in his brief, we conclude that the misdemeanor convictions are not encompassed within the Appellant's challenges on appeal. Moreover, we conclude that the trial errors were either harmless or did not implicate these convictions.