# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### FEBRUARY 2000 SESSION



**FILED**

March 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **NO. E1999-01104-CCA-R3-CD** |
| Appellant | ) | |
| | ) | **ANDERSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JAMES B. SCOTT, JR.,** |
| **DANIEL PHILLIPS, JR.,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (State Appeal: Suppression of |
| | ) | Confession) |

**FOR THE APPELLANT:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**ELIZABETH B. MARNEY**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JAMES N. RAMSEY**
District Attorney General

**JAN HICKS**
Assistant District Attorney General
149 North Main Street
Clinton, TN 37716

**FOR THE APPELLEE:**

**J. THOMAS MARSHALL, JR.**
District Public Defender
101 South Main Street
Clinton, TN 37716

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY, JUDGE**

**O P I N I O N**

The State of Tennessee appeals the order of the Anderson County Criminal Court suppressing the pretrial statement of the defendant who was indicted on two counts of child rape. The state appeals as of right, pursuant to Tenn. R. App. P. 3(c), since it alleges the substantive effect of the suppression is dismissal of the indictment. Finding no error in the trial court's suppression of the pretrial statement, we **AFFIRM** the judgment of the trial court.

## PROCEDURAL HISTORY

This case has followed a very unique procedural trail. After the trial court ordered that the pretrial statement of the defendant be suppressed, the state properly and timely sought from the trial court an interlocutory appeal pursuant to Tenn. R. App. P. 9. At the hearing, the prosecutor indicated the state could seek either a Tenn. R. App. P. 9 interlocutory appeal or a Tenn. R. App. P. 3 appeal as of right. The prosecutor requested a Tenn. R. App. P. 9 interlocutory appeal since this would "speed it along." Upon being reminded by the trial court that a Tenn. R. App. P. 3 appeal is only available when the ruling is "tantamount to dismissal," the prosecutor responded, "We can't prosecute this case without the statement." Thereafter, the trial court denied the Tenn. R. App. P. 9 interlocutory appeal; the state did not seek a Tenn. R. App. P. 10 extraordinary appeal; and the state filed a Tenn. R. App. P. 3 appeal as of right stating in its notice that the suppression of the pretrial statement "is the equivalent of dismissing the case."

By seeking a Tenn. R. App. P. 9 interlocutory appeal from the trial court, the state did that which should be done if the state desires relief from an order suppressing a confession. If a trial court denies a Tenn. R. App. P. 9 application relating to the suppression of a confession, the state should ordinarily consider a Tenn. R. App. P. 10 extraordinary appeal if proper grounds exist. In most instances the suppression of a defendant's pretrial statement would not preclude further

2

prosecution and would not have the substantive effect of the dismissal of an indictment. Although the grounds for granting a Tenn. R. App. P. 10 extraordinary appeal are limited, a Tenn. R. App. P. 3 appeal by the state seeking relief from suppression of a confession can only be sought where the substantive effect of the ruling results in a dismissal of the indictment. Since the state can ordinarily proceed with prosecution despite the suppression, the state should not seek a Tenn. R. App. P. 3 appeal in such situations.[1]

In the case at bar, the state has expressly represented to the trial court and this court that it cannot prosecute without the defendant's pretrial statement.[2] Based upon this representation, we entertain this Tenn. R. App. P. 3 appeal as of right.

## SUPPRESSION HEARING

Prior to any charges being lodged against the defendant, he was interviewed by two investigators from the "Child Protective Team." Upon motion of the defendant the trial court suppressed the defendant's pretrial statement to these investigators, finding his statement involuntary. The sole issue for review is whether the trial court erred in suppressing the pretrial statement. We find no error.

---

[1] If the suppression order relates to the suppression of seized drugs, the state ordinarily and properly files a Tenn. R. App. P. 3 appeal as of right. *See, e.g.,* State v. Lee, 836 S.W.2d 126 (Tenn. Crim. App. 1991). In such a case the state is truly unable to prosecute without the admission of the contraband.

[2] The record is inconclusive as to why the state cannot proceed with prosecution absent the defendant's pretrial statement. However, the state's motion for Tenn. R. App. P. 9 interlocutory appeal avers that "without defendant's admissions, the state will not be able to carry its burden of proof at trial. The child victim is very young, resides in a family situation that is non-supportive and will be easily confused and impeached at trial if she is even capable of testifying. There are no other witnesses to the offenses." The decision not to prosecute without the defendant's pretrial statement to the investigators was within the District Attorney's discretion.

**A.**

Shortly after allegations of the alleged sexual misconduct, an investigator with the Department of Children's Services requested that the defendant come to the Department of Human Services for an interview. The defendant drove himself to the interview where he was interrogated by Child Protective Services investigator, Mardell Mullins, and co-worker, Stacey Griffin. The defendant was intensively interrogated for approximately one hour on Friday afternoon, May 8, 1998.

Investigator Mullins advised the defendant that his young stepdaughters had made allegations of sexual misconduct against him. Defendant was further advised that his wife had stated that the defendant had admitted sexual misconduct. For much of the interview the defendant repeatedly and steadfastly denied any sexual misconduct in spite of the intensive and persistent questioning. Thereafter, he became equivocal by agreeing that it was possible that misconduct occurred during his drunken condition, but he did not remember any such misconduct. Finally, during the last few minutes of the interview, the defendant conceded sexual misconduct with one of his stepdaughters. He stated it took place at night outside the residence; claimed he was in a drunken state; and thought his stepdaughter was his wife. Upon realizing it was his stepdaughter, he stated that he ceased all sexual activities.

Two weeks later the defendant was asked to return and sign a written statement. The statement had been written out by one of the investigators. The defendant brought his mother and asked that the statement be read to him since he did not read very well. The defendant signed a statement consistent with the last few minutes of his interview. The written statement ends with the words, "I am signing and agreeing to this because I want to get help, and I know that admitting what I did is the first step." It is the conduct of the investigators leading to the defendant's statement that is the subject of this appeal.

**B.**

At the motion to suppress Investigator Mullins testified that no promises or threats were made to the defendant prior to his alleged admission. A transcript of the interrogation was then introduced into evidence.

The transcript reveals numerous instances in which the investigator informed the defendant that they had DNA samples from the alleged victim. At one point the investigator stated, "Your time in prison is being written because we have got a D & A (sic) smear of male ejaculate in this child's vagina...that is good for three months." At the hearing the investigator conceded she did not have a DNA test; did not know whether there was any DNA evidence; "pretty much" knew there was no DNA evidence at the time of the interrogation; and said "my job is not to tell the defendants the truth, my job is to get the truth."

The transcript also includes numerous instances in which the defendant was requested to confess in order to avoid the intervention of law enforcement. Furthermore, during the continual denials as well as the equivocal statements by the defendant, the interrogators insisted that a full confession was necessary in order for him and his stepdaughter to secure treatment.

The following excerpts appear in the transcript after numerous steadfast denials of wrongdoing by the defendant:

Mardell:     Well, like I say, Mr. Phillips, you can expect the cops to come knocking on your door because ... I think you can really say when they do that, Mardell gave me my chance because I have the numbers laid out on my desk right now to give you numbers for treatment ...

. . . . . . . . . . .

Mardell:     And that is why we want to give you the opportunity now so we can give you some numbers for free treatment programs.

Stacey:      We can help you with the treatment. We can help you with things like that.

. . . . . . . . . . .

Stacey:      ...We are not just saying that you come in and then you are out of here... that is not how it works. What we want you to do is to come in here and talk to us and be honest with us and then we can help you.

Daniel:      I am being honest.

Stacey:      If you lie to us...then we can't help you.

Daniel:      I am being honest with you...I haven't. ...

. . . . . . . . . . .

Daniel:      ... I will start those counseling...

Mardell:     I am not going to offer the counseling unless you are able to tell me...

Daniel:      Well...I don't know, like I said, that night...

Mardell:     Because this child... is the one that the doctor says has had sex...she is the one that has got to hear that...she is the one that needs to know that I can go to her tonight and say...Daniel said that, yes, this happened, that you are telling the truth and he is sorry and he is going to get in treatment right now and then I can start her treatment...

. . . . . . . . . . .

Mardell:     I want you to know that if this goes all the way to D&A (sic) testing...where they have to call you in to take the test...I want you to know that law enforcement will have a hold of it then and I will be out of it.

Daniel:      That is what I am trying to tell you. I don't know if I did and I don't know if I didn't.

. . . . . . . . . . .

Mardell:     They won't accept you into this program unless you are able to say...yeah, I did it.

Daniel:      Well, I am not saying that I did do it and I'm not saying that I didn't do it...I don't know if I did...I don't know if I did.

Mardell:     What I am trying to tell you is that as long as you straddle the fence that way, then this treatment program is not going to accept you and not only that, but law enforcement will pick it up at that point and they will go over and do the D.A.(sic) testing and when that happens...there is only one person in the world who has your D&A(sic)...Sir, and that is you and when law enforcement gets those results back...let me tell you what...Anderson County Jail will be for you and that is where they will put you and we have nothing to do with it at that point...we are out of it...

. . . . . . . . . . .

6

Mardell: Do you know what I am going to do...I am not going to waste any more of my time. I am not going to waste any more of my time...I am trying my best to give you an opportunity for treatment...

Daniel: It could have happened...alright (sic)...

Mardell: ... [F]or you to sit here and tell me that...I will take your treatment program but I don't know if I did it or not...I am not going to buy that...I am not going to waste any more of my time...

Daniel: What do you want me to say...to say that I did it and not knowing if I did it or not...

Mardell: ... Mr. Phillips...we have given you every opportunity to come clean right now and get into treatment, take care of some of your problems...right now...and you are sitting here trying to play tap dance games with me and I don't want to play games because I am very very tired because I have worked a very long hard week. Now, I am just telling you in about thirty seconds I am going to get up and walk out of here and when I walk out of here, your opportunities are over with because on Monday morning this will be on [the assistant district attorney's] desk and Monday afternoon, maybe Tuesday morning...they are going to have detectives at your door, picking you up and taking you to the hospital for a D&A (sic) sample and when that happens, Sir, you have signed your time in prison. I want you to understand that...that your time in prison is being written because we have got a D&A (sic) smear of male ejaculate in this child's vagina...that is good for three months.

. . . . . . . . . . .

Mardell: ... I am telling you when I finish this cup of coffee, I am out that door and I am on my way to Children's Hospital and the detective from Anderson County is going to be calling over there to pick up the D&A (sic) sample and I can tell you right now...old boy...that they are going to be knocking on your door and I will be subpoena (sic) to court as a witness and I will go to court and I will stand there and tell the judge, well, your Honor, I gave him the opportunity...he just wanted to straddle the fence...well, maybe I did or maybe I didn't...I don't know...I can't remember. If you get a blow job by a ten year old girl...you remember...if you screwed a ten year old girl...you remember.

Based upon the testimony at the hearing and the transcript of the interrogation, the trial court found the defendant's pretrial statement to be involuntary and ordered its suppression.

7

## STANDARD OF REVIEW

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998).

## VOLUNTARINESS

We first note that at the time of the pretrial statement the defendant was not "in custody" as contemplated by *Miranda*. The defendant came voluntarily to the Department of Human Services for the interview and was never deprived of freedom of movement to a degree associated with a formal arrest. State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996). Thus, the *Miranda* requirements are not applicable.

Nevertheless, a non-custodial interrogation must be voluntary in order to be admissible. Confessions that are involuntary, i.e., the product of coercion, whether it be physical or psychological, are not admissible. Rogers v. Richmond, 365 U.S. 534, 540, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961). The test of voluntariness under the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the United States Constitution. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). In order to make the determination, the particular circumstances of each case must be examined. Monts v. State, 218 Tenn. 31, 400 S.W.2d 722, 733 (1966). Coercive police activity is a necessary prerequisite in order to find a confession involuntary. State v. Brimmer, 876 S.W.2d 75, 79 (Tenn. 1994). The crucial question is whether the behavior of the state's officials was "such as to overbear petitioner's will to resist and bring about confessions not freely self-determined." State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980)(quoting Rogers, 365 U.S. at 544, 81 S.Ct. at 741)). The question must be

8

answered with "complete disregard" of whether or not the accused was truthful in the statement. Rogers, 365 U.S. at 544, 81 S.Ct. at 741.

In State v. Smith, 933 S.W.2d 450 (Tenn. 1996), the Supreme Court concluded that a social worker's statement to the defendant that the district attorney might not prosecute him for sexual abuse, if he were truthful and received counseling, could not reasonably be interpreted as a promise that there would be no prosecution. *Id.* at 456. The court further concluded that a statement that the defendant would be prosecuted if he chose not to admit unlawful conduct was insufficient to render his subsequent statement involuntary. *Id.* Under all the circumstances, the court concluded that the defendant's statements were not "compelled" in violation of the state or federal constitution. *Id.* However, the court noted the interrogator's remarks were "on the line, but did not cross it." *Id.* at 458. The court then expressed "the strongest disapproval of any practice whereby state agents encourage suspects to seek counseling for the purpose of eliciting incriminating statements for use in a subsequent prosecution." *Id.*

A review of the 36-page transcript of the interrogation in the case at bar reveals (1) misrepresentations by an investigator, (2) numerous steadfast denials by the defendant, (3) statements that law enforcement officials would be involved if defendant did not confess, and (4) promises of treatment for the defendant and his stepdaughter only if he fully confessed. The promises and inducements were made repeatedly prior to defendant's incriminatory statements. The actions of the interrogators were much more coercive than those found in Smith and, unlike Smith, crossed the line.

After hearing the testimony of one of the interrogators and considering the interrogation transcript, the trial court found "sufficient coercion and promises of leniency by the state actors to overbear the defendant's will and render his

statements involuntary."[3]  Based upon our review of the record, we are unable to

conclude that the trial court erred.[4]

## CONCLUSION

Accordingly, we **AFFIRM** the judgment of the trial court.  Based upon the

state's representation to the trial court and this Court that the state may not proceed

with further prosecution absent the defendant's pretrial statement, the indictment

is **DISMISSED**.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**THOMAS T. WOODALL, JUDGE**

_____
**JAMES CURWOOD WITT, JR., JUDGE**

---

[3]We assume the order of suppression extends also to the written statement as a fruit of the interrogation. *See generally*, State v. Smith, 834 S.W.2d 915, 919 (Tenn. 1992).

[4]When the trial court announced its decision to suppress the statement, the assistant district attorney predicted, "I think basically, Your Honor, it's a discretionary decision that an appellate court would probably uphold if the Court suppressed it and uphold it if the Court didn't suppress it."  The first part of the prediction was accurate.