IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2001

## STATE OF TENNESSEE v. RAYFIELD BRICE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-03596     Carolyn Wade Blackett, Judge**

---

**No. W2000-02601-CCA-R3-CD - Filed December 18, 2001**

---

A jury convicted the defendant of aggravated robbery, and the trial judge sentenced him to 12 years incarceration as a Range I standard offender. In this appeal, the defendant contends: (1) the evidence was insufficient to sustain his conviction; (2) his custodial statement should have been suppressed; (3) a juror failed to respond to a voir dire question concerning prior involvement in the legal system, thereby depriving the defendant of a fair and impartial jury; (4) the trial court erroneously disallowed admission of a crime scene report; and (5) his sentence was excessive. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Robert B. Gaia, Memphis, Tennessee, for the appellant, Rayfield Brice.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and Glen C. Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Seessel's grocery store was robbed at gunpoint on May 16, 1998, by two perpetrators. Remeus Johnson, one of the perpetrators, pled guilty to aggravated robbery prior to defendant's trial. Defendant was convicted of aggravated robbery at his trial by jury.

**TRIAL TESTIMONY**

Vera Bobbitt testified she was working as head cashier at Seessel's on Union Avenue in Memphis on May 16, 1998. At approximately midnight, she entered the store's business office and felt someone come from behind her. That person brandished a gun and ordered her and another employee on the floor. Another person entered the office and assisted in taking approximately $45,000 from the safe. They ordered her to count to 100 and fled.

Bobbitt identified the defendant at trial as the first person who entered the office, brandished the weapon, and ordered her on the ground. Additionally, Bobbitt had identified the defendant through a photo lineup prior to trial.

Officer Cham Payne of the crime scene unit testified officers recovered a blue sports bag and a bundle of currency in a residential area near the grocery store.

Remeus Johnson pled guilty to this aggravated robbery for an agreed eight-year sentence and testified at the defendant's trial. He testified he was arrested within six hours of the robbery and gave a statement on May 18, 1998, where he inculpated the defendant and himself. Specifically, Johnson stated he and the defendant went inside the store and stood in the checkout line until they saw Bobbitt open the office door. The defendant went in behind her, and Johnson followed approximately one minute later. They filled the bag with money, exited the office, and were chased by security guards. On cross-examination, Johnson conceded his fingerprints were lifted from a beer can he left at the checkout counter, and he placed the money in the residential area while fleeing.

Sgt. Reginald Morgan testified he first met with the defendant the day following defendant's arrest. He testified the defendant executed a written waiver of his Miranda rights and gave a statement admitting his involvement in the armed robbery.

For the defense, Kimberly Smith testified she was the defendant's girlfriend in May 1998. She further testified the defendant was at her apartment on May 16, 1998, and they put their child to bed at approximately 8:00 p.m. She stated they then watched television; they went to bed between 8:00 p.m. and midnight; and the defendant was present when she awakened the following morning. On cross-examination, she conceded it was possible the defendant left the apartment while she slept and returned prior to her awakening.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to sustain his conviction. We respectfully disagree.

## A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

## B. Analysis

Vera Bobbitt identified the defendant as a perpetrator of the armed robbery. While the defendant presented alibi testimony, it was within the jury's prerogative to reject his alibi defense. See State v. Underwood, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984). Bobbitt's testimony alone was sufficient to support the defendant's conviction. See State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Furthermore, the defendant confessed to the crime. This issue is without merit.

## II. CUSTODIAL STATEMENT

The defendant challenges his custodial statement made to Sgt. Morgan. The defendant contends his statement should have been suppressed because it was in response to a promise of benefits, thus making it involuntary. We respectfully disagree.

## A. Suppression Hearing Testimony

Sgt. Reginald Morgan testified at the suppression hearing that he talked with the defendant on May 19, 1998. Morgan stated the defendant executed a written waiver of his Miranda rights; no promises or threats were made; and the defendant confessed. On cross-examination, Morgan conceded he talked with the defendant for approximately 20 minutes "about life" and the benefits of having a "clear conscience." Morgan further stated he did not give the defendant any indication he would receive leniency in exchange for his confession.

The defendant testified at the suppression hearing that subsequent to his arrest, he was never given Miranda warnings; the signature on the written advice of rights was not his; the statement was altered from the one he signed; and the officer told him, "it'll be beneficiary [sic]" to tell the truth.

At the conclusion of the hearing, the trial court found the statement was knowingly and voluntarily given. The motion to suppress was denied.

## B. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, this court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000).

## C. Analysis

The defendant challenges his confession, arguing it was involuntary because it was induced by a promise of leniency. The testimony at the suppression hearing established Sgt. Morgan informed the defendant he needed to have a "clear conscience," and it would be "beneficial" for him to tell the truth. In order to be considered voluntary, a statement must not be extracted by any direct or implied promises, nor by the exertion of any improper influence. State v. Smith, 42 S.W.3d 101, 109 (Tenn. Crim. App. 2000). However, coercive police activity is a prerequisite to finding a confession involuntary. State v. Phillips, 30 S.W.3d 372, 377 (Tenn. Crim. App. 2000) (citing State v. Brimmer, 876 S.W.2d 75, 79 (Tenn. 1994)). An officer's promise of leniency does not render a subsequent confession involuntary *per se*, for "[t]he critical question is 'whether the behavior of the state's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined. . . .'" State v. Smith, 933 S.W.2d 450, 455-56 (Tenn. 1996) (citations omitted). Accordingly, we must determine whether the defendant's statement was "compelled" by a promise of leniency, and we must view all the facts and circumstances surrounding the taking of the statement. *Id.* at 455.

The crucial issue is one of credibility. The trial court implicitly accredited the officer's testimony and rejected defendant's assertions. The evidence does not preponderate against those findings. We, thus, are unable to find coercive police activity, and we conclude the defendant's statement was not compelled by promises of leniency. This issue is without merit.

### III. JUROR BIAS

The defendant contends a juror neglected to respond to a question which deprived him of a fair and impartial jury. We disagree.

## A. Standard of Review

When a juror's apparent misrepresentation or concealment of information during voir dire examination is challenged during a hearing incident to the motion for a new trial, the accused, as the moving party, has the burden of showing he or she incurred actual bias or prejudice as a result of the failure to reveal the information. State v. Bigbee, 885 S.W.2d 797, 805 (Tenn. 1994); State v. Caughron, 855 S.W.2d 526, 539 (Tenn. 1993). If a juror intentionally fails to disclose information

on voir dire which might indicate partiality, a presumption of prejudice arises. State v. Durham, 188 S.W.2d 555, 559 (Tenn. 1945). "Silence on the juror's part when asked a question reasonably calculated to produce an answer is tantamount to a negative answer." State v. Akins, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993).

## B. Analysis

Subsequent to trial, the defendant learned a juror had participated in conducting church services at the Shelby County Jail once per month on Sunday evenings during 1997 and 1998. During voir dire, the trial court asked prospective jurors, "Is there anybody here . . . involved in the system in some lay form or fashion?" The defendant claims the juror's failure to respond concerning his jail visits deprived him of a fair trial.

In support of his position, the defendant filed an affidavit of the juror which stated:

> Prior to service on said jury, I was involved in a volunteer program through my church, which at the time was known as Hickory Ridge Baptist Church. In this program, I , along with others in my church, would go to the Shelby County Jail to conduct a [S]unday night church service for inmates. This occurred about once per month.

We conclude the question asked by the trial court would not necessarily or reasonably call for a response from the juror. Certainly, there is no showing the juror intentionally misled the parties. Furthermore, there is no showing the juror had any contact with the defendant. There is no showing of bias or prejudice; thus, this issue lacks merit.

## IV.  CRIME SCENE REPORT

The defendant contends the trial court erroneously disallowed him to admit a crime scene report, while allowing the state to admit similar evidence. He contends the report established the absence of defendant's fingerprints at the crime scene or in the getaway car. We find no error.

The defendant asked Officer Payne if he were aware a beer can was seized at the grocery, and the alleged getaway car remained on the scene. When Officer Payne responded in the negative, the defendant sought to admit a document prepared by another officer. The report simply stated "prints of unknown value were lifted" from the beer can and car. Officer Payne said he did not prepare, nor had he ever seen, the document. The trial court disallowed introduction of the report because Officer Payne had no personal knowledge of the facts contained in the document, and the evidence was confusing and not probative.

The standard of review applicable to a decision to admit evidence is abuse of discretion. *See* State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).

At trial the defendant argued the report was admissible as a business record under Tenn. R. Evid. 803(6). In this court, just as in State v. Thompson, the defendant makes no acknowledgment of the general inadmissibility of police reports and makes no attempt to explain how this report falls outside the general rule of exclusion. 36 S.W.3d 102, 109 (Tenn. Crim. App. 2000) (citing McDonald v. Onoh, 772 S.W.2d 913, 914 (Tenn. Crim. App. 1989); Tenn. R. Evid. 803(8)). In Thompson, we considered the issue waived. *Id*. We further reject defendant's "goose and gander" contention that the trial court allowed the officer to give hearsay testimony about other officers' reports in stating the defendant was developed as a suspect, thereby treating him unfairly in disallowing the admission of the report.

Regardless, we conclude the trial court properly excluded the report through the testimony of Officer Payne. The document simply stated "prints of unknown value were lifted." It said nothing about a fingerprint analysis. As such, we agree with the trial court that the report had little, if any, evidentiary value. We find no abuse of discretion in this ruling. Furthermore, evidence concerning the getaway vehicle and co-perpetrator Johnson's fingerprints on the beer can was later admitted through Johnson. Accordingly, even if the trial court were in error, the defendant suffered no prejudice. Tenn. R. App. P. 36(b).

## IV. SENTENCING

The defendant alleges his sentence was excessive. We respectfully disagree.

## A. Standard of Review

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

**B. Analysis**

The Range I punishment for aggravated robbery is from eight to twelve years. *See* Tenn. Code Ann. § 40-35-112(a)(2). The trial court applied seven enhancement factors. The trial court determined no mitigating factors applied and sentenced the defendant to the maximum 12-year term. On appeal, the defendant challenges only the applicability of enhancement factors (2) (defendant was a leader) and (12) (the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim).

Bobbitt identified the defendant as the person who arrived at the office first, ordered her down on the floor, and brandished the weapon. Johnson corroborated that the defendant brandished the weapon. The trial court properly concluded the defendant was a leader in the commission of the offense.

The record reveals that a security guard was shot in the leg by one of the fleeing perpetrators; however, the record does not establish that it was the defendant who actually shot and inflicted bodily injury upon the security guard. Furthermore, there was not sufficient proof that the victim's gunshot injury constituted "serious bodily injury." Accordingly, we concur with the defendant that the trial court improperly applied factor 12.

Regardless, the misapplication of this enhancement factor does not necessarily entitle defendant to a reduced sentence. *See* Lavender, 967 S.W.2d at 809. We conclude the record justifies the imposition of the 12-year sentence.

## CONCLUSION

Based on the aforementioned, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

-7-