# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 8, 2014 Session

## STATE OF TENNESSEE v. MARK ANTHONY ANDERSON

### Criminal Court for Davidson County
### No. 2012-C-2277    Judge J. Randall Wyatt, Jr.

---

### No. M2013-01338-CCA-R3-CD - Filed May 30, 2014

---

A Davidson County jury convicted the Defendant, Mark Anthony Anderson, of one count of arson.  The trial court sentenced the Defendant to seven years in the Tennessee Department of Correction.  On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress his statements to police.  After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J. and JOE H. WALKER, III, SP.J., joined.

Nicholas McGregor, Nashville, Tennessee, for the Appellant, Mark Anthony Anderson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Brian Ewald, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant setting a homeless camp on fire in Nashville, Tennessee.  For this offense, a Davidson County grand jury indicted the Defendant for one count of arson.

### A. Pretrial Proceedings

The Defendant sought to suppress an oral statement he made to police officers while in custody, contending that he received no *Miranda* warnings when he made the incriminating statement. The trial court held a hearing on the motion, during which James Caruth, a police officer employed with the Metropolitan Nashville Police Department, testified that, on May 25, 2012, he responded to an incident that occurred at Liberty Lane and Peeples Court. He described that location as an area with "a lot of woods, trees." Officer Caruth stated that the area is usually inhabited by "homeless subjects" who set up camp, known as a "homeless camp."

Officer Caruth testified that he received a call on May 25 at 4:50 p.m. from the fire department reporting a fire in the woods surrounding the homeless camp. The fire department reported that "[t]he victims, the owners" of the camp had approached the fire department and stated that they knew who had set the camp on fire and that they wanted to file a police report. Officer Caruth testified that he and Officer Borum made contact with the victims who stated that the Defendant was responsible for setting fire to the camp. He recalled that the victims said they had seen the Defendant walking away from the area after it was ablaze and had seen the Defendant's girlfriend pacing the street adjacent to the homeless camp. The victims told Officer Caruth that they had been in an argument with the Defendant and had "kicked him out of their camp." Officer Caruth recalled that the victims pointed out the Defendant, who was walking nearby, so Officer Caruth followed him.

Officer Caruth testified that, as he approached the Defendant, the Defendant "hunkered down" in the woods and Officer Caruth asked the Defendant to step out of the woods and speak with him. Officer Caruth stated that the Defendant identified himself and produced his identification card. The Defendant denied having any knowledge of the fire. Officer Caruth testified that he then ran the Defendant's information through "NCIC," and the results indicated that the Defendant had an outstanding probation violation warrant. Officer Caruth advised the Defendant of the warrant. The Defendant asked if he could say goodbye to his girlfriend. Officer Caruth allowed the Defendant to say goodbye and then took him into custody.

Officer Caruth testified that, after he placed the Defendant inside his patrol vehicle, the Defendant stated that he was "upset" that he was being arrested because the victims of the fire had stolen property from him. Officer Caruth testified that he asked the Defendant to identify what property he was talking about. The Defendant replied that an argument had occurred between him and the victims, resulting in the Defendant and his girlfriend leaving the campsite to stay somewhere else. The Defendant stated that he took his belongings with him when he left. Later, the Defendant found his belongings at the victims' campsite, along with a can of camping fuel, so he proceeded to "burn [the victims'] [s**t] to the ground." Officer Caruth reiterated that the Defendant's story was in response to Officer Caruth's

2

question, "what property are you talking about?" Officer Caruth denied that he asked the Defendant any questions about the fire after he placed the Defendant into custody.

On cross-examination, Officer Caruth recalled that Officer Borum was not present when Officer Caruth located the Defendant in the woods. Officer Caruth stated that he questioned the Defendant about the fire, to which the Defendant replied that he did not know anything about the fire. Officer Caruth reiterated that he then discovered the warrant after the questioning about the fire was over. Officer Caruth stated that he placed the Defendant in handcuffs and put him inside the patrol vehicle. He agreed that he did not give the Defendant *Miranda* warnings.

Officer Caruth stated that he spoke with the Defendant's girlfriend, who also denied knowledge of the fire. Officer Caruth denied telling the Defendant inside the patrol vehicle that, if he did not admit to his involvement in the fire, his girlfriend would also become a suspect. He denied having any conversation with the Defendant other than about his property and stated that the Defendant told his entire story based on one question from the officer.

Before denying the Defendant's motion to suppress, the trial court found that the Defendant's statement was "volunteered" to Officer Caruth after he was placed into custody for his probation violation warrant. The trial court found that the statement was not made as the result of interrogation by Officer Caruth. The trial court subsequently denied the Defendant's motion to suppress his statements.

## B. Trial

At trial, the State called as witnesses both of the victims of the fire, who testified to their exchanges with the Defendant leading up to the incident. The State called Officer Borum, who testified that he arrived at the scene and spoke with the victims. Officer Borum testified that he heard the Defendant tell Officer Caruth that he had burned down the victims' campsite in retaliation for his belongings being taken from him.

On cross-examination, Officer Borum testified that he and Officer Caruth questioned the Defendant about what had happened with regard to the fire. At this point, the Defendant was not in handcuffs or inside the patrol vehicle.

Officer Caruth testified that he responded to the scene of the fire and spoke with the victims, who gave him the Defendant's name as the person who started the fire. Officer Caruth stated that he eventually came into contact with the Defendant, who gave his identification to the officer. Officer Caruth stated that he asked the Defendant "general questions" about the fire. The Defendant stated he did not have any knowledge of the fire,

but, once inside the patrol vehicle, he changed his story and said that he was angry at the victims because they had stolen his property. Officer Caruth asked the Defendant, "what did they steal[?]," and the Defendant responded that the victims had stolen his "camp stool" and so he "proceeded to 'burn their [s**t] to the ground in retaliation' for stealing his chair."

Based upon the evidence, the jury convicted the Defendant of one count of arson. The trial court sentenced the Defendant to serve a seven-year sentence in the Tennessee Department of Correction.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress his statement to Officer Caruth. He contends that he was in police custody under the purview of the Fifth Amendment, and that, without being advised of his rights, his subsequent statement to Officer Caruth was inadmissible as evidence at trial. The State responds that the Defendant's statement was properly admitted at trial because he was not subject to interrogation at the time he made the statement.

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23; *see State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W .2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* However, this court reviews the trial court's application of the law to the facts *de novo*, without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *Odom*, 928 S.W.2d at 22-23; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (holding that the Fifth Amendment's protection against compulsory self-incrimination is applicable to the states through the Fourteenth Amendment). Article I, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. "The significant difference between these

4

two provisions is that the test of voluntariness for confessions under article I, § 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." *State v. Crump*, 834 S.W.2d 265, 268 (Tenn. 1992).

Generally, one must affirmatively invoke these constitutional protections. An exception arises, however, when a government agent makes a custodial interrogation. Statements made during the course of a custodial police interrogation are inadmissible at trial unless the State establishes that the defendant was advised of his right to remain silent and his right to counsel and that the defendant then waived those rights. *Miranda v. Arizona*, 384 U.S. 436, 471-75 (1966); *see also Dickerson v. United States*, 530 U.S. 428, 444 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). A defendant's rights to counsel and against self-incrimination may be waived as long as the waiver is made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 478; *State v. Middlebrooks*, 840 S.W.2d 317, 326 (Tenn. 1992). "Confessions that are involuntary, i.e., the product of coercion, whether it be physical or psychological, are not admissible." *State v. Phillips*, 30 S.W.3d 372, 376 (Tenn. Crim. App. 2000) (citing *Rogers v. Richmond*, 365 U.S. 534, 540 (1961)).

In order to make the determination of whether a confession was voluntary, the particular circumstances of each case must be examined. *Id*. at 377 (citing *Monts v. State*, 400 S.W.2d 722, 733 (Tenn 1966)). "Coercive police activity is a necessary prerequisite in order to find a confession involuntary." *Id*. (citing *State v. Brimmer*, 876 S.W.2d 75, 79 (Tenn. 1994)). "The crucial question is whether the behavior of the state's officials was 'such as to overbear [defendant]'s will to resist and bring about confessions not freely self-determined.'" *Id*. (quoting *Rogers*, 365 U.S. at 544); *see State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980). The question must be answered with "complete disregard" of whether the defendant was truthful in the statement. *Phillips*, 30 S.W.3d at 377 (citing *Rogers*, 365 U.S. at 544).

In this case, the Defendant was placed into custody by Officer Caruth because of a probation violation warrant. Officer Caruth stated that his arrest of the Defendant occurred after any questioning about the Defendant's involvement with the fire had ceased. Once in custody inside the patrol vehicle, the Defendant made a statement about his stolen property, prompting Officer Caruth to ask about what property the Defendant was referring to. The Defendant proceeded to make a full disclosure to the officer about his argument with the victims and the subsequent theft of his property causing him to "burn [the victims'] [s**t] to the ground." Officer Caruth stated that he asked no other questions aside from the question about the property. Based on these circumstances, we conclude that the Defendant, while in custody inside the police vehicle, was not subject to interrogation by Officer Caruth and voluntarily made his statement to Officer Caruth. The Defendant is not entitled to relief.

### III. Conclusion

5

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE